IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| CENTIMARK CORPORATION, | ) | |
|---|---|---|
| Plaintiff, | ) | Civil Action No. 2:18-cv-01078-NBF |
| v. | ) | |
| | ) | Judge Nora Barry Fischer |
| TROY OSBORNE, PHILLIP HAMMETT, MICHAEL CALVIN, AND BLUSKY RESTORATION CONTRACTORS, LLC, | ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFF'S MOTION TO PRESERVE EVIDENCE

Plaintiff CentiMark Corporation ("CentiMark" or "Plaintiff"), by and through its undersigned counsel, submits the following Memorandum of Law in Support of Plaintiff's Motion to Preserve Evidence.

### I.  INTRODUCTION AND BACKGROUND

On August 16, 2018, CentiMark initiated this action by filing a Complaint against Defendants Troy Osborne ("Osborne"), Phillip Hammett ("Hammett"), Michael Calvin ("Calvin") (collectively, the "Individual Defendants") and BluSky Restoration Contractors, LLC ("BluSky") (collectively, "Defendants"). (Dkt. No. 1). CentiMark's Complaint, which is incorporated herein by reference, seeks, among other things, permanent injunctive relief to: (a) enforce the Individual Defendants' contractual obligations; (b) stop Defendants' misappropriation of CentiMark's trade secrets and confidential business information; (c) stop Defendants' efforts to unlawfully compete with CentiMark; and (d) protect CentiMark's valuable customer relationships and business goodwill.

As explained in more detail in CentiMark's Complaint, CentiMark is North America's largest commercial roofing and flooring contractor. Through its 85 offices in the United States,

Canada, and Mexico, CentiMark markets and sells, installs, and services major roofing and flooring systems for commercial and industrial customers. The Individual Defendants are former sales employees of CentiMark who are currently employed by BluSky, CentiMark's direct competitor. As a condition of and in consideration for their employment with CentiMark, the Individual Defendants were required to enter into Employment Agreements, which memorialize their working relationships with CentiMark. The Employment Agreements contain, among other things, important non-disclosure, return of materials, non-solicitation, non-compete, and notification of subsequent employment provisions. (Compl. Exs. A-C).

During the course of their employment with CentiMark, each Individual Defendant had access to CentiMark's trade secrets and confidential business information, including, but not limited to: customer and customer job information; job costs, pricing, and profit margin information; warranty information and service records; CentiMark sales force business plans; and CentiMark's auto-quote and auto-proposal systems. Additionally, CentiMark provided each Individual Defendant with a company-owned lap-top and mobile phone to enable them to successfully fulfill their job responsibilities and perform work efficiently.

Defendants Hammett and Calvin left CentiMark on or about December 30, 2015, and January 2, 2016, respectively, and shortly thereafter began working for BluSky. During the summer and fall of 2017, Defendants Hammett and Calvin, on behalf of BluSky and in violation of their Employment Agreements with CentiMark, began actively soliciting Osborne to leave his employment with CentiMark for BluSky.[1] Osborne resigned from his employment with CentiMark on April 30, 2018, effective immediately. Shortly thereafter, Osborne began working for BluSky in a similar capacity, in violation of his Employment Agreement. Following

---

[1] It is believed that Defendants Hammett and Calvin improperly solicited Osborne through their use of text messages and phone calls.

Osborne's resignation, CentiMark requested that Osborne return all CentiMark property in his possession including, but not limited to, his CentiMark-issued laptop and mobile phone. After multiple verbal and written requests from CentiMark, Osborne finally returned his CentiMark-issued laptop and mobile phone to CentiMark on May 11, 2018.

CentiMark engaged a forensic examiner to inspect Osborne's CentiMark-issued work laptop. The forensic examiner's inspection revealed that both in the days leading up to his resignation and after, Osborne accessed CentiMark's trade secrets and confidential business information on his CentiMark-issued laptop and inserted multiple USB devices into the laptop. More specifically, the inspection revealed:

- On April 24, 2018, in the morning and afternoon, Osborne inserted two different USB devices into his CentiMark-issued laptop.

- On April 26, 2018, Osborne inserted a Seagate Free Agent USB device with a capacity of 500+ gigabytes into his CentiMark-issued laptop.

- In the morning of May 11, 2018, Osborne inserted another USB device into his CentiMark computer.

Significantly, Osborne did not return or provide any of these USB devices to CentiMark when he returned his laptop and mobile phone to CentiMark later in the day on May 11, 2018.

The forensic analysis of Osborne's CentiMark-issued work laptop also confirmed that the information contained on the aforementioned USB devices Osborne inserted into his computer in the days just before and after he resigned from CentiMark, includes: the 2017 business plan of a highly regarded CentiMark sales manager; Osborne's 2017 business plan with, inter alia, customer information and a list of active roof warranties of CentiMark customers in his sales territory; a list of CentiMark completed jobs with information on job size, labor hours and costs, material costs, and forecasted and actual profit margin; weekly job tracking spreadsheets; specific customer auto-quotes; project drawings; warranty anniversary reports; and specific

customer auto-proposals. All of these aforementioned documents are CentiMark's trade secrets and confidential business information. They are items in which CentiMark has invested and/or developed, which CentiMark safeguards, protects through passwords, limits access to and which have independent economic value by virtue of not being known to or ascertainable by others in CentiMark's business.

CentiMark believes that Osborne –without authorization – copied information like that described in the preceding paragraphs onto the USB devices he inserted into his CentiMark computer and his personal email accounts and "Google Drive." It is further believed that Osborne improperly acquired and retained CentiMark's trade secrets and confidential business information, without authorization, in order to make himself a more attractive employment candidate to BluSky, and so that he and BluSky could use said information to compete unfairly against CentiMark. This evidence remains in the possession of Defendant Osborne. It is further believed the Osborne may have disclosed this evidence to BluSky, Hammett and/or Calvin.

## II. ARGUMENT

It is well-settled that parties to a lawsuit may not destroy evidence. *Rhoades v. YWCA*, No. 09-0261, 2009 U.S. Dist. LEXIS 95486, at *22 (W.D. Pa. Oct. 14, 2009) ("Once a party reasonably anticipates litigation, it must suspend routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents") (quoting *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 218 (S.D.N.Y. 2003)); *Hohider v. UPS*, 257 F.R.D. 80, 82 (W.D. Pa. 2009) ("While a litigant is under no duty [to] keep or retain every document in its possession, even in advance of litigation it is under a duty to preserve what it knows, or reasonably should know, will likely be requested in reasonably foreseeable litigation") (internal citations omitted).. Pennsylvania law recognizes that a "party has a duty to preserve evidence when the party is placed on notice that the evidence is relevant to litigation or when the

party should have known that the evidence may be relevant to future litigation." *CentiMark Corp. v. Pegnato & Pegnato Roof Mgmt*, No. 05-0708, 2008 U.S. Dist. LEXIS 37057 (W.D. Pa. May 6, 2008). Courts consider three factors when deciding whether to issue a preservation order:

1. the level of concern for the continuing existence and maintenance of the integrity of the evidence;

2. any irreparable harm likely to result to the party seeking the preservation of evidence; and

3. the capability of an individual, entity, or party to maintain the evidence sought to be preserved, not only as to the evidence's original form, condition or contents, but also the physical, spatial and financial burdens created by ordering evidence preservation.

*Capricorn Power Co. v. Siemens Westinghouse Power Corp.*, 220 F.R.D. 429, 433–34 (W.D. Pa. 2004).

Here, CentiMark seeks an Order directing Defendants to preserve all relevant electronic and physical documents, including, but not limited to: all USB devices that Osborne inserted into his CentiMark-issued work laptop and their contents; any personal computer which Osborne has used during his employment with CentiMark and BluSky; any BluSky-issued computer which Osborne has used during his employment with BluSky; any documents related to CentiMark in Osborne's personal and/or BluSky email and/or his "Google Drive;" any of CentiMark's trade secrets and confidential business information, in electronic and hard-copy form; and any cell phone used by Osborne, Hammett and/or Calvin during the period of July 1, 2017 through the present. The entry of this Order is both necessary and appropriate.

The evidence to be found on the USB devices, Osborne's personal computer, any BluSky-issued computer which Osborne has used during his employment with BluSky, and any cell phone used by Osborne, Hammett and/or Calvin, will be **critical** in substantiating the claims raised in CentiMark's Complaint (*i.e.*, breach of contract, misappropriation of trade secrets, etc.).

Moreover, preservation of this critical evidence is necessary and essential as most of the evidence is electronic and thus is of such a nature that it can be easily destroyed – either unintentionally or intentionally. Finally, an Order is particularly appropriate here given Osborne's surreptitious actions in improperly accessing, copying and downloading CentiMark's trade secrets and confidential business information in the days leading up to and even **after** his resignation.

In order for CentiMark to conduct discovery and adequately prepare for the trial in the case, it is necessary that the Court enter an Order directing Defendants to preserve all relevant information and documents. Entry of such an Order will not harm Defendants; however, the denial of CentiMark's Motion to Preserve Evidence will substantially and irreparably harm CentiMark by subjecting critical, relevant evidence to possible destruction and/or spoliation.

## III.   CONCLUSION

For the foregoing reasons, CentiMark respectfully requests this Court enter an Order directing Defendants, and all other persons or entities within their control or supervision, and all other persons or entities acting in concert with and/or participating with them, to preserve, maintain, and protect in their present state from destruction, modification or alteration, all of the documents, electronically stored information and things related to Plaintiff's claims which are in Defendants' possession, custody or control, pending the completion of this action or until further Order of Court, including without limitation: all USB devices that Osborne inserted into his CentiMark-issued laptop computer and their contents; any personal computer which Osborne has used during his employment with CentiMark and BluSky; any BluSky-issued computer which Osborne has used during his employment with BluSky; any documents related to CentiMark in Osborne's personal email and/or his "Google Drive;" any of CentiMark's trade secrets and

confidential business information, either in electronic and hard-copy form; and any cell phone used by Osborne, Hammett and/or Calvin during the period of June 2017 through the present.

Dated: August 29, 2018

Respectfully submitted,

*/s/ Allison R. Brown*
Robert W. Cameron, (PA #69059)
bcameron@littler.com
Terrence H. Murphy, (PA #36356)
tmurphy@littler.com
Allison R. Brown, (PA #309669)
abrown@littler.com
Christian A. Angotti, (PA #322881)
cangotti@littler.com
**LITTLER MENDELSON, P.C.**
625 Liberty Avenue
26th Floor
Pittsburgh, PA 15222
Telephone: 412.201.7635/7678/7623
*Facsimile*: 412.456.2377 fax

*Attorneys for Plaintiff,
CentiMark Corporation*

# CERTIFICATE OF SERVICE

I certify that on this 29th day of August, 2018 a true and correct copy of the foregoing Memorandum of Law in Support of Plaintiff's Motion to Preserve Evidence was served via U.S. First Class Mail, postage prepaid, upon the following:

Troy Osborne
623 Polo Circle
Chelsea, AL 35043

Kent Stemper
Chief Executive Officer
BluSky Restoration Contractors, LLC
BluSky Corporate Headquarters
9767 East Easter Avenue
Centennial, CO 80112

Phillip Hammett
2757 Evening Shade Drive
Olive Branch, MS 38654

Michael Calvin
8557 Belle Drive, Apt. 207
Highlands Ranch, CO 80129
*and*
3715 Kenwood Avenue
Memphis, TN 38654

/s/ *Allison R. Brown*
Allison R. Brown