# EXHIBIT A

EMPLOYMENT AGREEMENT
FOR

TROY OSBORNE

IMPORTANT NOTICE

AS A CURRENT EMPLOYEE BEING CONSIDERED FOR PROMOTION OR AS A POTENTIAL NEW EMPLOYEE BEING CONSIDERED FOR EMPLOYMENT, CENTIMARK HAS PRESENTED YOU WITH THE ATTACHED EMPLOYMENT AGREEMENT. THIS AGREEMENT CONTAINS SPECIFIC PROVISIONS WHICH YOU, AS A CANDIDATE FOR SUCH PROMOTION, SHOULD THOROUGHLY REVIEW WITH YOUR ATTORNEY, ACCOUNTANT OR OTHER ADVISOR OF YOUR CHOICE, PRIOR TO SIGNING. SINCE THIS AGREEMENT IS A BINDING AND LEGAL CONTRACT, IT IS STRONGLY RECOMMENDED THAT YOU REVIEW ITS CONTENTS WITH YOUR ATTORNEY. YOUR FULL UNDERSTANDING AND VOLUNTARY ACCEPTANCE OF THE TERMS OF THE AGREEMENT IS VERY IMPORTANT.

THE AGREEMENT CONTAINS VARIOUS PROVISIONS WHICH WILL BE REVEALED UPON YOUR COMPLETE REVIEW; HOWEVER, CENTIMARK WOULD LIKE TO HIGHLIGHT SOME OF THE VARIOUS LEGAL OBLIGATIONS WHICH YOU WILL BECOME BOUND TO IN THE EVENT THAT YOU SIGN THE AGREEMENT. PLEASE REMEMBER THAT THESE ARE HIGHLIGHTS ONLY AND THAT A COMPLETE REVIEW OF THE AGREEMENT IS MANDATORY.

YOU HAVE A CHOICE: IF YOU DO NOT WISH TO ACCEPT THE PROMOTION OR NEW JOB, THEN DO NOT SIGN THE ATTACHED EMPLOYMENT AGREEMENT. FOR THOSE DECLINING A PROMOTION, YOU WILL CONTINUE TO OCCUPY THE SAME JOB WITH THE SAME DUTIES AND RESPONSIBILITIES AS CURRENTLY EXISTS. BUT, IF YOU SIGN THE EMPLOYMENT AGREEMENT, YOU WILL BE OBLIGATED TO ABIDE BY ITS TERMS.

PLEASE REVIEW & INITIAL EACH ITEM AFTER READING.   EMPLOYEE'S INITIALS

1. Compensation & Termination of Agreement.    *TO*
   (Article I & II)

2. Restrictions on Competition    *TO*
   You are prohibited from competing against
   CENTIMARK & your ability to be employed in
   CENTIMARK's industry is limited.

(Articles III & IV)

3. Notification of future employment.
   (Article IV 4.07)

4. CENTIMARK has a right to seek an injunction
   and damages in the event that you violate
   the Agreement
   (Article V 5.03)

5. Choice of law and venue - Any legal action
   brought to enforce the agreement will be filed
   in Pittsburgh, Pennsylvania, and will be subject
   to Pennsylvania law even though you or the actions
   giving rise to the action may not have occurred in
   Pennsylvania.
   (Article VII 7.06)

I HAVE NOT BEEN THREATENED OR COERCED IN ANY WAY AND AGREE THAT I HAVE BEEN ADVISED TO SEEK LEGAL COUNSEL.

WITNESS:

_____
Signature of witness

Kyle Heston
Printed Name of Witness

_____
Signature of Signing Party

Troy Osborne
Printed Name of Signing Party

2-26-16
Date of Signing

2                Initial _____

EMPLOYMENT AGREEMENT

THIS AGREEMENT is by and between CENTIMARK CORPORATION, a Pennsylvania corporation of 12 Grandview Circle, Canonsburg, PA 15317 ("CENTIMARK") and **Troy Osborne** of **423 Jessica CT., Morris, IL 60450**(Employee).

W I T N E S S E T H:

WHEREAS, CENTIMARK is engaged in the business of selling and providing building maintenance supplies and flooring and roofing sales and services; AND

WHEREAS, it is the intention of CENTIMARK and Employee that the terms and conditions of the employment relationship be set forth in writing; AND

WHEREAS, Employee agrees to execute this Agreement in consideration, among other things, of the offer of promotion (and its inherent benefits) or the offer of new employment which is being accepted by Employee by signing this Agreement and other benefits as described herein.  Employee acknowledges that Employee desires to receive the benefits of the offered promotion or new employment and signs this Agreement knowingly and willingly in order to receive those benefits and intending to honor all of the provisions herein; AND

WHEREAS, Employee acknowledges that this Agreement is reasonable and necessary because CENTIMARK will provide Employee with access to its confidential, proprietary information and trade secrets and access to CENTIMARK's customers and prospective customers, all of which CENTIMARK is entitled to protect from disclosure, misappropriation and/or unfair exploitation.

NOW, THEREFORE, in exchange for the consideration set forth herein or offered hereby, and intending to be legally bound hereby, the parties agree as follows:

ARTICLE I     EMPLOYMENT

1.01.  Office.  Employee's initial position shall be **Regional Sales Manager**, but this position and the duties currently assigned to Employee are subject to change at the discretion of CENTIMARK without eliminating or modifying Employee's obligations under this Agreement.  During Employee's employment with CENTIMARK, Employee shall devote Employee's

3                    Initial 

entire productive time, ability and attention to the business and services of CENTIMARK, and shall use Employee's best energies and abilities in the performance of such duties as may be assigned to Employee from time to time by CENTIMARK. Employee shall not engage in any other job, occupation or profession during the term of his employment without the written consent of CENTIMARK's President. Employee shall comply with all of CENTIMARK's rules, regulations and instructions and shall not usurp any corporate opportunities of CENTIMARK.

1.02.  Compensation. Employee's initial semi-monthly base compensation shall be **$3,333.33** which if annualized equals **$80,000.00**; all amounts are subject to withholding. This initial base compensation may be adjusted from time to time by CENTIMARK, in conjunction with changes in its practices or performance, or changes in the Employee's position, job duties, performance and/or places for the performance of such duties; such changes shall not eliminate or modify Employee's obligations under this Agreement.

1.03.  Other Consideration.

(a)  Commission Plan. Employee may also be eligible to earn commission payments in accordance with CENTIMARK's Commission Schedule currently in effect which is commensurate with Employee's position, and as may be subsequently amended or modified. These sales commissions shall be subject to offset and/or reduced by the amount of base salary or draw paid to Employee at any time hereafter.

(b) Company Vehicle Program. Employee shall also be eligible to participate in CENTIMARK's company vehicle program. This initial participation may be adjusted from time to time by CENTIMARK, in conjunction with changes in its practices or performance, or changes in the Employee's position, job duties, performance and/or places for the performance of such duties.

(c)  Vacation. Employee shall be entitled to vacation days consistent with CENTIMARK's practices currently in effect. :

(d)  Welfare Benefit Plans. Employee shall be entitled to participate in all the welfare benefit plans and programs maintained by CENTIMARK from time to time for the benefit of its employees, including, without limitation, all medical, hospitalization, dental, disability, accidental death and dismemberment and travel accident insurance plans and programs.

4          Initial _TD_

1.04. Pension and Incentive Benefit Plans. Employee shall be entitled to participate in any of CENTIMARK's pension, retirement, savings and other benefit plans commensurate with Employee's new position or for which Employee qualifies, including such pension or retirement or other similar plans which may exist and be in operation; subject, however, to any future amendment, modification, and/or termination. Employee's participation in such plans is governed solely by the terms and conditions of the written plans and Employee is referred to the same for a greater explanation for his rights and benefits.

1.05. Term. The Employee's employment or promotion by CENTIMARK under this Agreement shall begin on ~~February~~ *MARCH* 15, 2016 (the "Effective Date"). This Agreement shall not be for a fixed term, but shall continue until either party shall give the other party written notice of a desire to terminate the employment relationship or the employment relationship is terminated pursuant to the provisions of Article II. The notice described in this paragraph shall be given not less than fourteen (14) days prior to the termination of the employment relationship. If this Agreement is not terminated by notice or pursuant to the provisions of Article II, this Agreement shall continue to be enforceable until terminated pursuant to the provisions contained herein or as provided for in Article II. There are post employment obligations under this Agreement that shall survive Employee's termination of employment.

ARTICLE II        TERMINATION

2.01. Company Termination.
(a) For Cause -- Employee's employment relationship with CENTIMARK may be terminated, at any time, without prior written notice, for "cause." For the purposes of this Agreement, "cause" shall mean if Employee (1) breaches any material term, covenant, or condition of this Agreement; (2) acts in such a manner as to show bad faith, gross neglegence, or willful malfeasance in the exercise of his duties; (3) willfully disobeys instructions reasonably given to transfer territories or represent CENTIMARK in any other territories which are, from time to time assigned to Employee; (4) willfully displays unprofessional conduct directed toward customers or co-workers; or (5) acts dishonestly or fraudulently or engages in willful misconduct. In such event, CENTIMARK shall only be obligated to pay Employee's salary and benefits hereunder accrued and unpaid as of the date of termination.

(b) Without Cause -- CENTIMARK or Employee may at their discretion terminate for any reason this Agreement upon



fourteen (14) days prior notice at any time. In such event, CENTIMARK shall only be obligated to pay Employee's salary and benefits earned through the conclusion of the notice period. Simultaneously with Employee's notice of Employee's resignation, Employee shall inform CENTIMARK in writing as to Employee's employment plans following the termination of employment with CENTIMARK.

2.02. For all terminations, Employee shall be entitled to reimbursement for any unused vacation time or other such or similar accrued, but unused, benefits, which may have accumulated prior to the date of termination.

2.03 Continuing Obligations. The obligations of Employee under Article IV of this Agreement and other obligations related to Employee's post-employment activities shall continue notwithstanding termination of Employee's employment pursuant to this section (regardless of reason). If Employee's employment is terminated and Employee is subsequently rehired, the terms of this Employment Agreement shall apply to the subsequent employment relationship, unless superseded by a new written Employment Agreement. The compensation provisions shall be renegotiated at the time of Employee's re-employment.

ARTICLE III        EMPLOYEE'S ACKNOWLEDGEMENTS

Employee recognizes and acknowledges that:

(a) CENTIMARK, in the course of its business, has developed certain "know-how," including, but not limited to, certain technical information detailed below and that CENTIMARK regards this information as constituting trade secrets, proprietary information and confidential information.

(b) This information is the property of CENTIMARK and that the use, misappropriation or disclosure of the information would constitute a breach of trust and could cause irreparable injury to CENTIMARK. Employee recognizes that it is essential to the protection of the goodwill of CENTIMARK and to the maintenance of its competitive position that the information be kept secret and that Employee not disclose it to others or use it to his own advantage or to the advantage of others.

(c) During the course of Employee's employment with CENTIMARK, it will be necessary to disclose to Employee certain trade secrets, proprietary information and confidential information which may include, but is not limited to, technical information, such as methods, processes, formulas, compositions,

6         Initial 

inventions, product development, machines, computer programs, special hardware, product hardware, related software development, research projects, ideas improvements, systems methods and other confidential technical data, and business information, such as, sales, sales volume, sales methods, sales proposals, customers and prospective customers, identity of key purchasing personnel in the employ of customers and prospective customers, proposals, sales leads, national sales accounts, profit margins, service reports, details of previous calls and personal data regarding each individual buyer, amount or kind of customer's purchases from CENTIMARK and its divisions, sources of supply, system documentation, pricing data (including general price lists and prices charged to specific customers), and marketing, production or merchandising systems or plans (hereinafter "CENTIMARK's Confidential Information").

   (d) It is essential for the proper protection of CENTIMARK's Confidential Information, its goodwill, its relationship with customers and prospective customers and its relationship with its Employees that Employee be restrained within the parameters and in accordance with the provisions set forth in Article IV.

   Employee further recognizes and understands that his duties at CENTIMARK may include the preparation of materials, including written or graphic materials, and that any such materials conceived or written by him shall be done as "work made for hire" as defined and used in the Copyright Act of 1976, 17 U.S.C. & et seq. In the event of publication of such materials, Employee understands that since the work is a "work made for hire," CENTIMARK will solely retain and own all rights in said materials, including right of copyright, and that CENTIMARK may, at its discretion, on a case-by-case basis, grant Employee by-line credit on such materials as CENTIMARK may deem appropriate.

ARTICLE IV  EMPLOYEE'S COVENANTS AND AGREEMENTS

   4.01. (a) Non-Disclosure of CENTIMARK's Confidential Information. Employee agrees to hold and safeguard all of CENTIMARK's Confidential Information in trust and confidence for CENTIMARK. Employee agrees that Employee shall not, without prior written consent of CENTIMARK, misappropriate, disclose or use or make available to any person or any entity for use outside CENTIMARK's organization at any time, either during Employee's employment with CENTIMARK or subsequent to termination of such employment with CENTIMARK, for any reason, any of CENTIMARK's Confidential Information, whether or not it was developed by

7  Initial 

Employee. Employee agrees not to use said information to Employee's own advantage or to the advantage of others except as required in the performance of Employee's duties to CENTIMARK.

   (b)  Return of Materials. Employee agrees that all records, drawings, blueprints, data, samples, models, correspondence, CENTIMARK's Confidential Information, manuals, notes, reports, notebooks, proposals and any other documents concerning CENTIMARK's customers or products or other technical information or business information used by CENTIMARK and any other tangible materials or copies or extracts of tangible materials regarding CENTIMARK's operations or business, testings, proposals, sales leads, pricing formulations or product development received by Employee during Employee's employment with CENTIMARK (hereinafter referred to as "CENTIMARK's Material") are and shall be the exclusive property of CENTIMARK. Employee agrees to keep CENTIMARK's MATERIAL at all times in CENTIMARK's custody and subject to CENTIMARK's control. Upon the termination of Employee's employment with CENTIMARK, for any reason, or upon demand by CENTIMARK, all CENTIMARK's Material shall be returned to CENTIMARK. No copies will be made by Employee, or retained by Employee, of any written information obtained, whether or not developed by Employee. Employee shall not alter or destroy any electronically stored information, but take steps to maintain its integrity for return to CENTIMARK.

   4.02.  Disclosure of Works and Inventions Assignment of Patents. Employee shall disclose promptly to CENTIMARK or its nominee any and all works, inventions, discoveries and improvements authored, conceived or made by Employee during the period of employment and related to the business or activities of CENTIMARK, and hereby assigns and agrees to assign all his interest therein to CENTIMARK, or its nominee. Whenever requested to do so by CENTIMARK, Employee shall execute any and all applications, assignments or other instruments which CENTIMARK shall deem necessary to apply for and obtain Letter Patent or Copyrights of the United States or any foreign country or to otherwise protect CENTIMARK's interest therein. Such obligations shall continue beyond the termination of employment with respect to works, inventions, discoveries and improvements authored, conceived or made by Employee during the period of employment, and shall be binding upon Employee's assigns, executors, administrators and other legal representatives.

   4.03. Paragraph 4.03 is not used in this Agreement.

   4.04.  Restrictions on Competition. Employee covenants and agrees that Employee shall not engage, directly or

8     Initial _TLD_

indirectly, whether as principal or as agent, officer, director, employee, consultant, shareholder or otherwise, alone or in association with any other person, corporation or other entity, in any Competing Business in a Restricted Area during his employment and for two (2) years from the date of termination (regardless of the reason) of Employee's employment with CENTIMARK ("Restricted Period").

(a) For the purpose of this Agreement, the term "Competing Business" shall mean any person, business, enterprise or other entity which directly or indirectly sells or attempts to sell any products or services, or any combination thereof, which are the same as, or similar to, the products and/or services sold or offered by CENTIMARK at any time during the last three (3) years that Employee was employed by CENTIMARK.

(b) For the purpose of this Agreement, a Restricted Area shall mean that area comprised of all of the territory(ies), county(ies), district(s) or other geographical designations in which Employee has operated as an Employee of Centimark at any time during the two (2) year period just prior to Employee's termination.

        4.05.   Non-Solicitation of Customers and Prospective Customers.

(a) Employee agrees that during his employment and for the two (2) year period immediately following his employment with CENTIMARK (regardless of the reason for termination), Employee will not, directly or indirectly, solicit the trade of, trade with, contact for business purposes or accept business from any Customer or Prospective Customer of CENTIMARK other than for the benefit of CENTIMARK. For the purpose of this Agreement, the term "Customer" shall mean any person or entity that has procured or agreed to procure CENTIMARK's products or services at any time during Employee's final three (3) years of employment with CENTIMARK and the term "Prospective Customer" shall mean any person or entity that has not yet become a Customer of CENTIMARK but that has been contacted for the sake of doing business or solicited by CENTIMARK during Employee's final two (2) years of employment with CENTIMARK.

(b) The prohibition on solicitation of Customers and Prospective Customers of CENTIMARK, as described in Paragraph 4.05 (a), shall be limited to such acts which would constitute Employee's engaging in a Competing Business, as described in Paragraph 4.04(a); however, it shall not prohibit Employee, after termination of employment, from soliciting the trade of such

9    Initial _TLb_

Customers and Prospective Customers while engaged in, or for the promotion and purposes of, a business that is not a Competing Business.

       4.06. Non-Solicitation of Employees. Employee agrees that, during his employment with CENTIMARK and for two (2) years following termination of Employee's employment with CENTIMARK(regardless of the reason), Employee shall not, directly or indirectly, solicit or induce, or attempt to solicit or induce, any Employee of CENTIMARK to leave CENTIMARK for any reason whatsoever or hire or assist in the hiring of any Employee of CENTIMARK. For purposes of this Agreement, an Employee of CENTIMARK shall mean any person employed by CENTIMARK within six (6) months of the date of any actions of Employee that violate this paragraph.

       4.07. Notification of Subsequent Employment
Employee shall upon termination of his employment with Centimark, immediately notify Centimark of the name, address and nature of the business of his new Employer, or, if self-employed, the name, address and nature of his new business or advise Centimark of continued unemployment. Employee shall provide such notification immediately upon securing new employment, or commencing a business, and continue to provide such notification if such employment status should change. Employee's obligation to provide such notice shall continue for two (2) years after the date of the Employee's termination of employment with Centimark. Employee hereby agrees to disclose and authorizes CENTIMARK to disclose this Agreement to Employee's new employer or prospective employer.

ARTICLE V        EMPLOYEE'S REPRESENTATIONS AND WARRANTIES

       5.01. No Prior Agreements. Employee affirms that he is not a party to, or otherwise subject to, the terms of any contract, agreement or understanding which limits or otherwise affects his ability to perform his obligations hereunder, including, without limitation, any contract, agreement or understanding containing terms and provisions similar in any manner to those contained in Article IV hereof.

       5.02. Employee's Abilities. Employee represents that his experience and capabilities are such that the provisions of Article IV will not prevent him from earning a livelihood, subsequent to termination of employment with CENTIMARK and acknowledges that it would cause CENTIMARK serious and irreparable injury and cost if Employee were to breach the obligations contained in Article IV.

10        Initial 

5.03. Remedies. In the event of a breach by Employee of the terms of this Agreement, CENTIMARK shall be entitled, if it shall so elect, to institute legal proceedings to obtain damages for any such breach, or to enforce the specific performance of this Agreement by Employee and to enjoin Employee from any further violation of this Agreement and to exercise such remedies cumulatively or in conjunction with all other rights and remedies provided by law. Employee acknowledges, however, that the remedies at law for any breach by him of the provisions of this Agreement may be inadequate and that CENTIMARK shall be entitled to preliminary and/or permanent injunctive relief against him in the event of any breach. If CENTIMARK prevails in a proceeding for damages or injunctive relief, Employee agrees that CENTIMARK, in addition to other relief, shall be entitled to reasonable attorney's fees, costs and the expenses of litigation incurred by CENTIMARK in securing the relief granted by the Court.

In addition to the foregoing, and as a cumulative remedy, CENTIMARK is entitled to seek and receive, as liquidated damages, the sum of $500 per day for each calendar day Employee is proven to be in violation of Paragraph 4.04, $3,000 per Customer or Prospective Customer that Employee is proven to have contacted in violation of Paragraph 4.05 that does not result in a sale, and 50% of the Gross Revenue from any sale that Employee is proven to have made and/or arranged in violation of Paragraphs 4.04 or 4.05. It is agreed that such sum is a reasonable and just amount and is not a penalty, and the parties further agree that by setting forth such liquidated damages shall not limit CENTIMARK's ability to secure preliminary or emergency injunctive relief for Employee's breach of this Agreement.

ARTICLE VI        LIMITATION OF ACTIONS

No legal action shall be brought and no cause of action shall be asserted by or on behalf of Employee, his heirs, executors or assigns or personal or legal representatives after the expiration of one (1) year from the date of the accrual of such cause of action, provided, however, that if any shorter period of limitations is otherwise applicable to any such cause of action, such shorter period shall govern. ADDITIONALLY, BEFORE EMPLOYEE CAN FILE A CAUSE OF ACTION AGAINST CENTIMARK, THE EMPLOYEE MUST PROVIDE WRITTEN NOTICE, BY CERTIFIED MAIL ADDRESSED TO THE CORPORATE LEGAL DEPARTMENT, OF ANY SUCH CLAIM, CAUSE OF ACTION OR COMPLAINT AS HE MAY HAVE, WITHIN NINETY (90) DAYS FROM THE DATE THAT SUCH CLAIM, CAUSE OF ACTION OR COMPLAINT ARISES OR OCCURS.

11        Initial 

ARTICLE VII       MISCELLANEOUS

7.01. Authorization to Modify Restrictions. It is the intention of the parties that the provisions of Article IV hereof shall be enforceable to the fullest extent permissible under applicable law, but that the unenforceability (or modification to conform to such law) of any provision or provisions hereof shall not render unenforceable, or impair, the remainder thereof. If any provision or provisions hereof shall be deemed invalid or unenforceable, either in whole or in part, this Agreement shall be deemed amended to delete or modify, as necessary, the offending provision or provisions and to alter the bounds thereof in order to render it valid and enforceable.

7.02. Tolling Period. The non-competition and non-solicitation obligations contained in Article IV hereof shall be extended by the length of time during which Employee shall have been in breach of any of the provisions of such Article IV.

7.03. Employer Violation Not a Defense. In an action by CENTIMARK, to enforce this Agreement, any claims asserted by Employee against CENTIMARK shall not constitute a defense to CENTIMARK's right to seek any remedies available to it. Employee shall also have the right to proceed with any such claims as Employee may have against CENTIMARK.

7.04. Entire Agreement. This Agreement has been freely and fairly negotiated by the parties hereto and each party has had the opportunity to have the same reviewed by legal counsel of his/her choice and to modify the draftsmanship hereof and, therefore, the terms of this Agreement shall be construed and interpreted without any presumption, or other rule, requiring construction or interpretation against the interest of the party causing this Agreement to be drafted. This Agreement embodies the entire understanding between the parties and supersedes and cancels all prior understandings and agreements, whether oral or written. There are no other representations, agreements, arrangements or understandings, oral or written, between or among the parties hereto relating to the subject matter of this Agreement that are not fully expressed in this Agreement. This Agreement shall not be amended, or modified, in any manner whatsoever, except by a writing signed by all of the parties hereto.

7.05 Agreement Binding. The obligations of Employee under this Agreement shall continue after the termination of his employment with CENTIMARK for any reason, with or without cause,

12         Initial 

and shall be binding on his heirs, executors, legal representatives and assigns and shall inure to the benefit of any successors and assigns of CENTIMARK and shall be assignable by CENTIMARK.

       7.06.  Governing Law, Jurisdiction and Venue.

       (a)  Choice of Law.  This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania without giving effect to the principles of conflicts of law.

       (b)  Consent to Jurisdiction.  Employee hereby irrevocably submits to the personal and exclusive jurisdiction of the United States District Court for the Western District of Pennsylvania or the Court of Common Pleas of Allegheny County, Pennsylvania in any action or proceeding arising out of, or relating to, this Agreement (whether such action arises under contract, tort, equity or otherwise).  Employee hereby irrevocably waives any objection which Employee now or hereafter may have to the laying of venue or personal jurisdiction of any such action or proceeding brought in said courts.

       (c)  Exclusive Jurisdiction and Venue.  Jurisdiction and venue of all such causes of action <u>shall</u> be exclusively vested in the United States District Court for the Western District of Pennsylvania or the Court of Common Pleas of Allegheny County, Pennsylvania.

       (d)  Waiver of Attempt to Challenge Venue.  Provided that CENTIMARK commences such actions in the courts identified in Paragraph 7.06(c), Employee irrevocably waives Employee's right to object to or challenge the above selected forum on the basis of inconvenience or unfairness under 28 U.S.C. § 1404, 42 Pa. C.S. § 5322 or similar state or federal statutes.  Employee agrees to reimburse CENTIMARK for all of the attorneys fees and costs it incurs to oppose Employee's efforts to challenge or object to litigation proceeding in the courts identified in Paragraph 7.06(c) with respect to actions arising out of or relating to this Agreement (whether such actions arise under contract, tort, equity or otherwise).

       7.07.  Counterparts, Section Headings.  This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original, but all of which together shall constitute one and the same instrument. The section headings of this Agreement are for convenience of reference only

13    Initial _____

and shall not affect the construction or interpretation of any of the provisions hereof.

    7.08. **Notices.** All notices, demand or other communications, which may be, or are required to be, given hereunder, or with respect hereto, and which are required by the terms of this Agreement to be in writing, shall be given either by personal delivery or by mail, telecopy or other similar delivery system, and shall be deemed to have been delivered or to have been given or made when personally delivered, when deposited in mail, first class postage prepaid or when delivered to the telecopying device or company, charges prepaid, addressed to the respective party at its address noted in the preamble to this Agreement or to such other addresses as the parties may from time to time designate, by written notice, to the other party.

    EMPLOYEE ACKNOWLEDGES THAT EMPLOYEE HAS READ AND UNDERSTANDS THE FOREGOING PROVISIONS AND THAT SUCH PROVISIONS ARE REASONABLE AND ENFORCEABLE. EMPLOYEE ALSO ACKNOWLEDGES THAT THIS IS AN IMPORTANT AND BINDING LEGAL CONTRACT WHICH SHOULD BE REVIEWED BY EMPLOYEE'S ATTORNEY BEFORE EMPLOYEE SIGNS THE SAME.

    IN WITNESS WHEREOF, the parties hereto have executed this Agreement or caused this Agreement to be executed the day and year first above written.

Witness:

_____
Signature

Kyle Heston
Printed Name of Witness

_____
Signature

Troy Osborne
Printed Name of Signing Party

2-26-16
Date of Signing

14      Initial _TO_

OPINION OF COUNSEL

Counsel confirms that he/she has reviewed the entire Agreement with Employee and acknowledges that the execution of this Agreement is the free, voluntary and knowing act of the Employee and that Employee has not alleged the existence of any claims of any nature whatsoever which are not adequately addressed herein.

Counsel for Employee further confirms that he/she has <u>not</u> advised Employee that this Agreement is non-binding, illegal or an unenforceable Agreement.

_____
Signature of Attorney for Employee

_____
Printed Name of Signing Party

_____
Date of Signing

ACCEPTANCE

AND NOW, the date and year noted below, CENTIMARK CORPORATION hereby accepts the terms and conditions of the Employment Agreement at its Corporate Headquarters in Canonsburg, Pennsylvania.

Attest: _____
Vice President, Human Resources

CENTIMARK CORPORATION
BY: _____
Timothy M. Dunlap, President & COO

3-9-16
Date of Signing

15    Initial _____